## Section 16.

Citizen Band Radios shall be permitted, subject to reasonable Company rules and regulations.

## Section 17.

The Employer and Union agree to negotiate rates and language for a Multimodal Container addendum to the New England Supplemental Freight Agreement.

## Section 18. Administrative Dues

Each Local Union under this Supplement may, at its discretion, implement Administrative Dues as outlined below.

Effective 4/1/88 and continuing thereafter during the life of this Agreement and in accordance with the terms of an individual and voluntary written checkoff of membership dues in a form permitted by Section 302(c) of the Labor-Management Relations Act, the Employer agrees to deduct weekly from the wages of each employee covered by this Agreement who signs said authorization:

Five cents (.05) per hour for each payroll hour worked or paid to said employee for a maximum of forty (40) hours during the week as Administrative Dues, provided that Administrative Dues shall not be deducted for those employees who are out on occupational or non-occupational injuries.

All monies collected for Administrative Dues by the Employer shall be held in trust by the Employer until paid to the Union. The administrative Dues which are deducted shall be paid monthly by the tenth (10th) of the month following the month in which they were deducted.

## Section 19. Sick Leave

Effective during the term of this Agreement, each regular employee shall be entitled to five (5) days sick leave each year, in accordance with the rules and regulations applying to Article 38 of the NMFA, except that sick leave shall be paid effective the first day of such sickness, provided employees do not abuse the above provision.



# ARTICLE 52 - CLASSIFICATIONS

1. A local driver is any driver not included in the definition of a road driver.

2. A switcher or yardman is an employee who is used to hook up and drop trailer and/or move equipment to or from the loading platform on the Employer's property, and duties incidental thereto, such as, gassing, fueling and checking equipment.

3. A power unit operator is an employee engaged in the operation of a power-driven unit in connection with the safe loading or unloading of freight.

4. A checker and/or dragline operator is an employee who is assigned to the handling of waybills, the checking of merchandise and the safe loading and unloading of vehicles, and duties incidental thereto.

5. A helper is an employee whose duty is to assist the driver in all work except the actual driving of a truck.

6. A platform man and/or warehouseman and/ or dragline man who is not assigned to handle waybills is an employee who is regularly employed on a freight platform or dock in connection with the safe loading and unloading of vehicles, and duties incidental thereto.

7. A lumper is an employee who directs a freight crew on a pier and who relays orders to other employees in the absence of management.

8. A winchman is an employee who operates a winch in connection with rigging work as herein described.

9. A lead man or first-class rigger is an employee who works and directs rigging operations and rigging crews. This classification shall apply except where work is performed under AGC Agreement on job site construction. Rigging is in addition to cribbing, blocking, etc. and includes any specialized equipment other than a crane or a similar type of equipment making lift or hoist.

10. A second-class rigger is an employee who assists a first-class rigger in performing a rigging operation.

11. A working foreman is an employee who works with, and directs other employees, and who may relay orders to other employees in the absence of management.

12. A local double-bottom chauffeur is an employee who pulls a combination of two pieces of equipment between terminals and/or staging area and is on an hourly rate of pay.

13. A low bed trailer operator is an employee who operates any low bed trailer.

## ARTICLE 53 - HOURS OF WORK AND OVERTIME

### Section 1.

Five (5) days shall constitute a normal week's work for local employees from Monday to Friday inclusive, and the hours of labor each day shall be worked in uninterrupted succession. All time worked in excess of eight (8) hours per day shall be paid as overtime at one and one-half times the normal rate.

### Section 2.

Employees ordered to report for work before their starting time shall be guaranteed eight (8) hours work or pay in addition to the time worked before their starting time with time and one-half for all hours over eight (8). Any employee ordered to work after his regular starting time shall have his time revert back to his regular starting time.

### Section 3.

(a) Any employee who is called or reports as scheduled shall be guaranteed a minimum of eight (8) hours' work or pay.

(b) All employees required to report on Saturday, as such, shall be guaranteed a minimum of eight (8) hours' work at their applicable premium rate of time and one-half (1-1/2). Any time worked in excess of eight (8) hours on Saturday shall be paid for at one and one-half (1-1/2) times the applicable premium rate.

(c) All employees required to work on a sixth report in a payroll period shall be guaranteed a minimum of eight (8) hours at their applicable premium rate of time and one-half (1-1/2). Any time worked in excess of eight (8) hours on those days shall be paid for



at one and one-half (1-1/2) times the applicable premium rate, except as otherwise mutually agreed to by the Employer and the Local Union regarding replacements.

(d) Except for meal time, working time for all employees shall start when they are instructed to report and do report, at terminal or garage and shall continue until relieved from duty at same regardless of occupation. Employees shall be allowed time out for meals at the Employer's directions which shall be either one (1) hour or one-half (1/2) hour and shall not begin until the employee has worked four (4) hours, but must begin before he has completed five (5) hours of work. However, the Employer agrees to establish a uniform practice as to all platform employees which shall remain in effect unless changed by the Employer not more than once in a thirty (30) day period.

Any employee who is ordered to work during any part of his one (1) hour or his one-half (1/2) hour meal period, whichever the case may be, shall be paid for the full meal period and shall be allowed and must take twenty (20) minutes to eat lunch and such time shall be considered as time worked. An employee who is ordered to work during any part of his one (1) hour meal period shall receive a minimum of nine (9) hours' pay on that day. An employee who is ordered to work during any part of his one-half (1/2) hour meal period shall receive a minimum of eight and one-half (8-1/2) hours' pay on that day.

### Section 4.

(a) A daily time record shall be maintained by the Employer for all of his employees. Any Employer who employs five (5) or more employees shall have a time clock, and the employee's time shall be computed by the time clock on time cards. Employer with less than five (5) employees who does not have a time clock shall permit employees to keep their own time records.

(b) Each employee shall "punch in" his own time card at the start of the day, and "punch out" his own time card at the completion of the day's work at the Employer's place of business.

(c) Employees assigned to work and/or completing their work away from the Employer's place of business shall be exempt from punching in and out. In the event that any employee is ordered to report

at, or leave his vehicle at, a different place than his usual starting point, such employee shall be paid transportation expenses back to his starting point. All such traveling time shall be considered as time worked.

## Section 5. Break Bulk Terminal Operation

(a) A break bulk terminal operation may be established upon the mutual agreement of an Employer and a Local Union as long as such agreement is equal to the standards established by this Break Bulk Negotiating Committee. Failing agreement, shall come before this Break Bulk Negotiating Committee for approval.

(b) Employers who operate a break bulk operation shall establish a scheduled workweek consisting of any five (5) consecutive days out of a seven (7) day period.

(c) Forty (40) hours shall constitute a normal week's work. All employees required to report for work on their unscheduled days shall be guaranteed a minimum of eight (8) hours' work at their applicable premium rate of time and one-half. Any time worked in excess of eight (8) hours on those days shall be paid for at one and one-half times the applicable premium rate. Breakbulk operations may institute straight time eight (8) hour shifts with two (2) twenty (20) minute paid breaks upon mutual agreement between the parties.

(d) In the event of absenteeism on any schedule commencing within a calendar day the vacancy may be filled by:

(1) A regular seniority employee, in laid-off status, in seniority order.

(2) A non-seniority or casual employee.

(e) When the number of employees on a schedule is increased, the work is assigned.

(1) A regular seniority employee, in laid off status, in seniority order.

(2) An eligible, qualified employee that has completed his regular schedule and is available for a sixth punch,

except that spare employees up to 15% of the total employees on



the dock and yard list, may be used prior to

the calling of employees for premium time. Seniority shall prevail.

(3) Available non-seniority or casual employee.

(f) Holidays - Article 49 will apply; however, in the event the schedules are maintained and work performed on the holiday, employees will work their assigned schedules and will be paid the rate of time and one-half (1-1/2) in addition to the eight (8) hours' holiday pay. Replacements for absentees on a holiday will be worked in accordance with Item (e).

(g) Break bulk operation includes dock work, switching assignments inside the yard, shuttle to and from compounds and terminals.

(h) All local pickup and delivery performed on Saturday, Sunday or a holiday shall be treated as work performed under the terms of Article 53, Section 3 of the New England Supplemental Agreement.

(i) The parties agree all employees working in the classifications of dockwork and yard assignments, as stated above, shall be entitled to all other terms and conditions as set forth in the N.M.F.A. and N.E.S.F.A. dated March 1, 1982.

(j) When a break bulk terminal is established, present schedules on the Sunday thru Thursday and Monday thru Friday workweek shall be maintained. However, with the exception, those employees, within their seniority may bid other work schedules. This is not to be considered to be a guarantee.

The Employer and Local Union may agree to road driver provisions and method of dispatch as it pertains to a seven (7) day breakbulk operation and submit such agreement to the New England Supplemental Negotiating Committee.

## ARTICLE 54 - WAGES AND ALLOWANCES

(a) Classifications

Drivers, Checkers, Lumpers, Power Unit Operators, Switchers, Yardmen, Teamsters, Drag Line Operators, Twin-pup trailer drivers in accordance with applicable Local, State and Federal Law.

| | Per Hour |
|---|---|
| Effective 4/1/98 | $18.43 |
| Effective 4/1/99 | 18.78 |
| Effective 4/1/00 | 19.13 |
| Effective 4/1/01 | 19.48 |
| Effective 4/1/02 | 19.83 |

Helpers, Platform Men, Stablemen, Warehouseman

| | Per Hour |
|---|---|
| Effective 4/1/98 | $18.33 |
| Effective 4/1/99 | 18.68 |
| Effective 4/1/00 | 19.03 |
| Effective 4/1/01 | 19.38 |
| Effective 4/1/02 | 19.73 |

Double Bottom Men

| | Per Hour |
|---|---|
| Effective 4/1/98 | $18.48 |
| Effective 4/1/99 | 18.83 |
| Effective 4/1/00 | 19.18 |
| Effective 4/1/01 | 19.53 |
| Effective 4/1/02 | 19.88 |

1st Class Riggers, Lead Men, Winchmen, Low Bed Trailer Operators

| | Per Hour |
|---|---|
| Effective 4/1/98 | $18.78 |
| Effective 4/1/99 | 19.13 |
| Effective 4/1/00 | 19.48 |
| Effective 4/1/01 | 19.83 |
| Effective 4/1/02 | 20.18 |

2nd Class Riggers

| | Per Hour |
|---|---|
| Effective 4/1/98 | $18.68 |
| Effective 4/1/99 | 19.03 |
| Effective 4/1/00 | 19.38 |
| Effective 4/1/01 | 19.73 |
| Effective 4/1/02 | 20.08 |



Working Foremen and Dispatchers

| | Per Hour |
|---|---|
| Effective 4/1/98 | $18.53 |
| Effective 4/1/99 | 18.88 |
| Effective 4/1/00 | 19.23 |
| Effective 4/1/01 | 19.58 |
| Effective 4/1/02 | 19.93 |

Employees older in service and in the order of their seniority shall be entitled to the work available from Monday to Friday inclusive in amounts not less than those designated in the Schedule above. Should the Employer violate this principle, he shall compensate for the earning opportunity lost and at the rate provided herein those employees affected.

(b) Entry Rates (New Hires/Probationary Employees)

Refer to Article 36 of the 1998-2003 N.M.F.A.

(c) Casual Employees

| | Per Hour |
|---|---|
| Effective 4/1/98 | $15.56 |
| Effective 4/1/99 | 15.86 |
| Effective 4/1/00 | 16.16 |
| Effective 4/1/01 | 16.46 |
| Effective 4/1/02 | 16.76 |

All dock casuals' wage rates will remain frozen at $15.00 per hour during the full-term of the 1998-2003 NMFA.

(d) Any employee working in a higher pay classification for any part of the day shall receive the higher rate of pay for the entire day.

(e) No employee shall be required to deadhead for any rate less than his normal rate of pay.

(f) Any local employee required to sleep away from home shall be provided satisfactory sleeping quarters by the Employer plus $15.00 for meal allowance.

## ARTICLE 55 - CLASSIFICATIONS AND TRIP RATES

(a) A road driver is an employee operating on line haul between the terminal areas.

(b) On all dispatches from point of origin to destination at which the driver takes a statutory rest period, or from point of origin to destination and return with no statutory rest period at destination, the driver shall be guaranteed eight (8) hours' pay.

When the miles driven times the applicable mileage rate exceeds the guarantees above, the driver shall be so compensated. Hours worked shall be paid in addition. When it does not exceed the mileage guarantee he shall be compensated at the applicable hourly rate.

(c) All drivers who report and are not dispatched shall be guaranteed the equivalent of the smallest paid round trip out of their Company, but in no case shall this amount be less than eight (8) hours' pay.

## ARTICLE 56 - MILEAGE RATES

Mileage rates for road drivers shall be as follows:

| | Per Mile |
|---|---|
| Effective 4/1/98 | 45.0500¢ |
| Effective 4/1/99 | 45.9250¢ |
| Effective 4/1/00 | 46.8000¢ |
| Effective 4/1/01 | 47.6750¢ |
| Effective 4/1/02 | 48.5500¢ |

The mileage rate for road drivers operating twin/pup trailers shall be an additional 1.225 cents per mile of the established mileage rates as indicated above. Except where road drivers are currently enjoying a greater rate, such individual road drivers shall be red circled until such time as the new mileage rates for twin/pups equals or exceeds such red circled mileage rates.

## ARTICLE 57 - PICK-UPS, DELIVERIES AND RATE FORMULA

(a) All over-the-road operations shall be from terminal to terminal or to check points or relay points or from any one of these to another. Road drivers shall make drops and/or hooks of their own units at the home domicile, unless other agreements exist between the Company and the Union.



(b) A Road Driver shall not be permitted to make pickups or deliveries within the terminal area of any other Local Union affiliated with the International Brotherhood of Teamsters, unless permission has been or is granted by the Business Agents of the Local Unions involved, his own Agent and the Agent of the Local Union in the area where the pickup or delivery is to be made.

(c) A Road Driver shall not make any pickups and/or deliveries to a consignee or shipper in any of the terminal areas, but must take the freight into the terminal if the Employer has one there. He shall be paid at the normal rate per hour for all time consumed in effecting such terminal pickups and drops, or delay time at terminals.

(d) Any pickup or deliveries to or from a contract or connecting carrier, or a consignee or shipper, shall be paid for at the normal rate per hour for all time consumed.

Drop and/or pickup of empty, partially loaded or fully loaded trailers or combination of both drop and pickup regardless of weight shall be paid for at the normal rate per hour for all time consumed.

(e) Any claim for time consumed in road failure, or other delays resulting from Acts of God, snow or impassable highways shall be submitted in writing by the employee upon completion of the trip, and each claim shall be adjusted at the normal rate per hour for the amount of time involved.

(f) The normal rate of pay for hourly work performed by Road Drivers other than overhead and sleeper drivers shall be the rate set forth for drivers in Article 54.

(g) When transportation is required to sleeping quarters, it shall be provided by the Employer within thirty (30) minutes after the driver is relieved from duty. If the Company fails to do so within the thirty (30) minute free time period, the driver shall be paid for each minute from relieved of duty time to such time transportation is available, at the applicable hourly rate of pay.

## ARTICLE 58 - RELIEF HOLDOVER, PREMIUM PAY & EXPENSES

(a) All drivers relieved from duty at a terminal, check point or relay

point away from home shall be dispatched on a trip within fourteen (14) hours.

(b) On a Saturday night or holiday eve, if a road driver is not dispatched direct to his home terminal over the routes commonly traveled before 10:00 p.m., he shall be compensated at the rate of time and one-half for that one-half portion of his trip, including pickups, drops and terminal time enroute. A road driver dispatched after 10:00 p.m. must be dispatched directly to his home terminal, over routes commonly traveled by each carrier, at the rate of time and one-half. This does not apply to overhead drivers.

(c) Satisfactory sleeping quarters shall be provided by the Employer at terminal layover points, and at all other points that require sleeping quarters.

In addition seven dollars and fifty cents ($7.50) shall be paid at the start of each trip for personal expenses.

(d) If a road driver is to be held over beyond his fourteen (14) hours off duty and is so notified not later than the fourteenth (14th) hour, he shall receive twenty-four dollars ($24.00) hold-over pay.

He shall also receive for each subsequent fourteen (14) hour period or part thereof until he is dispatched the full cost of his sleeping quarters.

(e) If not dispatched or notified of a holdover, he may be held at his normal rate from the fourteenth to the twenty-second hour. If not then dispatched, he shall receivetwenty-four dollars ($24.00) hold-over pay.

In addition, for each subsequent fourteen (14) hour period or part thereof until he is dispatched, he shall receive the full cost of his sleeping quarters.

## ARTICLE 59 - DROPPING TRAILERS

(a) The Employer will not drop a trailer to be loaded or unloaded at any place unless the work of loading, unloading and switching is performed by his employees working under this Agreement.

(b) Competitive Dropping of Trailers



The Employer will not drop a trailer to be loaded or unloaded unless the customer has been determined by the Company and the Local Union to be a competitive drop. Trailers dropped for less than twenty-four (24) hours during a layoff must be covered by bargaining unit employees, except in cases of customers serviced by nonunion carriers.

(c) In the areas where the present practice of dropping a trailer to be loaded or unloaded differs from that set forth in (a) and (b) above, the present practice in effect in that area shall be continued.

(d) Trailers shall not be spotted to circumvent a premium day's pay.

(e) Questions of interpretation regarding this Article shall be submitted directly to the New England Supplemental Negotiating Committee.

## ARTICLE 60 - DOUBLE BOTTOMS

Drivers dispatched for double-bottom operation shall receive double-bottom rate to final destination even though a box, boxes, or kite are picked up or dropped enroute. However, double-bottom rate shall apply only to mileage from Compound nearest origin point to Compound nearest destination point.

## ARTICLE 61 - OVERHEAD OPERATIONS

### Section 1. Definition

Overhead drivers shall be road drivers engaged in moving loads between points in excess of 500 miles, with the first leg of a relay to be in excess of 350 miles, unless otherwise mutually agreed by the Local Union and the Employer.

### Section 2. Single Man Operation Rates

The hourly guaranteed rate shall be as follows:

| | Per Hour |
|---|---|
| Effective 4/1/98 | $18.37 |
| Effective 4/1/99 | 18.72 |
| Effective 4/1/00 | 19.07 |

| | |
|---|---|
| Effective 4/1/01 | 19.42 |
| Effective 4/1/02 | 19.77 |

The rate of pay per mile for drivers on all overhead runs shall be as follows:

| Tandem Axle Unit | 4 axles | 5 axles |
|---|---|---|
| Effective 4/1/98 | 45.0500¢ | 45.1750¢ |
| Effective 4/1/99 | 45.9250¢ | 46.0500¢ |
| Effective 4/1/00 | 46.8000¢ | 46.9250¢ |
| Effective 4/1/01 | 47.6750¢ | 47.8000¢ |
| Effective 4/1/02 | 48.5500¢ | 48.6750¢ |

In addition to the rate of pay per mile provided herein, drivers shall be paid for all time spent on drops, pickups, breakdowns, delay time, impassable highways and deadheading time at the applicable rates provided herein. Lodging shall be paid in addition.

## Section 3. Double Bottom Units

Where regular highway semis are used for double bottom purposes or delivering or transporting freight, other than steel or perishable commodities in which case the rate shall be as follows:

| | |
|---|---|
| Effective 4/1/98 | 48.0650¢ |
| Effective 4/1/99 | 48.9400¢ |
| Effective 4/1/00 | 49.8150¢ |
| Effective 4/1/01 | 50.6900¢ |
| Effective 4/1/02 | 51.5650¢ |

If two man operation is involved, each man shall receive one-half of such rate.

## Section 4. Pickup and Delivery

Time spent in making pickups and/or deliveries at points enroute and intermediate terminals and time lost through delay in pickups and/or deliveries at intermediate terminals shall be paid for at the minimum rate of:

| | Per Hour |
|---|---|
| Effective 4/1/98 | $18.37 |
| Effective 4/1/99 | 18.72 |
| Effective 4/1/00 | 19.07 |
| Effective 4/1/01 | 19.42 |
| Effective 4/1/02 | 19.77 |



## Section 5. Mileage Determination For All Runs

(a) In case of a dispute over mileage, same shall be computed over the route by official AAA mileage. When AAA mileage is not current or available, then the latest official state highway maps shall be used to determine the correct mileage. On routes where official mileage is not given by the methods set forth, same shall be logged by the Union and Employer, such findings to be final and binding. When route is logged, the starting point at origin shall be the main U.S. Post Office, and the ending point at destination shall be the main U.S. Post Office.

Upon request of the Local Union, the Company shall provide a mileage chart over its regular routes between cities.

(b) In those cases where miles paid for exceed miles established under (a), the excess miles shall be reduced one-sixth annually each April 1st during the period of this Agreement, provided that in no event shall such reduction of excess miles result in reduction of more than one-half of each applicable mileage increase provided herein, calculated on the mileage paid for on the effective date of this Agreement. The first adjustment shall be made no later than April 1, 1988. In applying the one-sixth formula, fractions shall be rounded to the closest whole number.

Where the total miles on a run are considered, fractional paid for miles shall be rounded to the next highest whole number.

In no case shall the reduction of miles as set forth herein change or alter existing guarantees or conditions based upon present paid-for mileage.

(c) If as a result of mileage determinations as provided in subsection (a) the Company is paying for less than the actual miles traveled, the mileage payments based upon the new mileage increase shall become effective immediately. If, however, a reduction in mileage payments becomes necessary because of new roads, new routes, alternate routes or expressways such mileage shall be decreased by no more than one-sixth annually in accordance with the formula above set forth in subsection (b).

## Section 6. Schedule of Dispatching

Truck Drivers may be dispatched ahead of regular relay runs pro-

vided such dispatch would not result in cancellation of regular relay runs.

## Section 7. Lodging

Comfortable, sanitary lodging shall be furnished by the Employer in all cases where an employee is required to take a rest period away from his home terminal, and shall be maintained at present-day standards. Comfortable, sanitary lodging shall mean a room with not more than two beds in it and not more than two drivers sleeping in the room at the same time, except in dormitories at company-owned terminals, with janitor service, clean sheets, pillow cases, blankets, hot and cold running water, good ventilation and easy access to clean, sanitary toilet facilities in the building and shall also be equipped with showers and/or bath and air-conditioned rooms. There shall be no bunk beds or double beds. In addition dormitories in new terminals must be sound-proofed, and shall not provide for more than two men in a room.

Road driver lodging shall be maintained on the basis of one driver per room except in emergencies. Existing dormitories or other accommodations operated as dormitories may be continued on the basis of two drivers per room provided that they are from the same domicile and are put to bed within one (1) hour of each other. Dormitories which are commenced to be constructed ninety (90) days after notice of ratification shall provide for one (1) driver per room. This provision shall not apply until such accommodations are available. At hotels and motels two (2) men will be permitted to stay in the same room provided the second driver is assigned the room within two (2) hours.

Where an existing dormitory currently provides for two men in a room, such practice shall be continued. In all terminals with dormitories there shall be a drivers' waiting room maintained at present day standards. In all other cases where the Company does not provide drivers with a waiting facility which is adequate under the circumstances, it shall be taken up as a grievance.

Air-conditioned dormitories, or air-conditioned hotel rooms if available, shall be furnished when seasonal and climatic conditions require. Hotel rooms and dormitories shall be equipped with blinds or draperies or be suitably darkened during daylight hours.

A road driver relieved from duty at a Company terminal or a rest



period away from home shall receive Fourteen Dollars ($14.00) for room rent.

If accommodations are unavailable at such figure and it is necessary for a driver to pay in excess of the above amounts he shall receive reimbursement of actual cost of room. The Company shall furnish transportation to and from the nearest public transportation, when there is no public transportation available and further provided that this provision shall not apply where driver is allowed to use tractor for transportation.

All new dormitories must provide for one (1) man to a room. Room rent of owner-operator shall not be deducted from gross receipts or truck earnings regardless of whether truck rental is at minimum rate or above.

No new dormitory at company-owned terminals shall be permitted.

## Section 8. Paid For Time - General

All employees covered by this Agreement shall be paid for all time spent in the service of the Employer. Rates of pay provided for by this Agreement shall be minimums. Time shall be computed from the time that the employee is ordered to report for work and registers in and until the time he is effectively released from duty. All time lost due to delays as a result of over-loads or certificate violations involving federal, state or city regulations, which occur through no fault of the driver, shall be paid for. Such payment for driver's time when not driving shall be the hourly rate.

## Section 9. Call-In Time

Drivers called to work shall be allowed sufficient time, without pay, to get to the garage or terminal, and shall draw full pay from the time ordered to report and register in. If not put to work, employees shall be guaranteed six (6) hours' pay at the rate specified in this Agreement. If such employee is put to work he shall be guaranteed a minimum of eight (8) hours' pay.

## Section 10. Layovers

Where a driver is required to lay over away from his home terminal, layover pay shall commence following the fourteenth (14th) hour

after the end of the run. If driver is held over after the fourteenth (14th) hour he shall be guaranteed two (2) hours' pay, in any event, for layover time. If he is held over more than two (2) hours, he shall receive layover pay for each hour held over up to eight (8) hours in the first twenty-two (22) hours of layover period, commencing after the run ends. The same principle shall apply to each succeeding eighteen (18) hours, and layover pay shall commence after the tenth (10th) hour.

When on layover on Sundays and holidays there shall be a meal allowance of Six Dollars ($6.00) for the first meal; Six Dollars ($6.00) for the second meal; and Seven Dollars and Fifty Cents ($7.50) for the third meal.

No more than three (3) meals will be allowed during any 24 hour period. Also, employees shall receive meal allowance each time they are held beyond the sixteenth (16th) hour of the first layover period and after the tenth (10th) hour on subsequent layovers after the first.

Driver shall not be compelled to report to work at home terminal until he has had ten (10) hours off-duty time.

Whenever any Employer arbitrarily abuses the free time allowed in this Section, then this shall be considered to be a dispute and the same shall be handled in accordance with the grievance procedure set forth in this contract.

## Section 11. Breakdowns or Impassable Highways

On breakdowns or impassable highways, drivers on all runs shall be paid the minimum hourly rate for all time spent on such delays, commencing with the first hour or fraction thereof, but not to exceed more than eight (8) hours out of each twenty-four (24) hour period, except that when an employee is required to remain with his equipment during such breakdown or impassable highway, he shall be paid for all such delay time at the rate specified in this Agreement. Where an employee is held longer than an eight (8) hour period, he shall, in addition, be furnished clean, comfortable, sanitary lodging, plus meals. The pay for delay time shall be in addition to monies earned for miles driven and/or work performed.

Time required to be spent with the equipment shall not be includ-



ed within the first eight (8) hours of each twenty-four (24) hour period for which a driver is compensated on breakdown or impassable highways, but must be paid for in addition.

## Section 12. Deadheading

In all cases where an employee is instructed to ride or drive on Company or leased equipment, he shall receive full pay as specified in this Agreement; when instructed to deadhead on other than Company or leased equipment, the employee shall likewise receive the full rate of pay as specified in this Agreement, plus the cost of transportation.

## Section 13. Bobtailing

Driving of tractor without trailer shall be paid on the same basis as tractor-trailer drivers.

## Section 14. Dropping Trailer

(a) The Employer will not drop a trailer to be loaded or unloaded at any place unless the work of loading, unloading and switching is performed by his employees working under this Agreement.

(b) Competitive Dropping of Trailers

The Employer will not drop a trailer to be loaded or unloaded unless the customer has been determined by the Company and the Local Union to be a competitive drop. Trailers dropped for less than twenty-four (24) hours during a layoff must be covered by bargaining unit employees, except in cases of customers serviced by nonunion carriers.

(c) In the areas where the present practice of dropping a trailer to be loaded or unloaded differs from that set forth in (a) and (b) above, the present practice in effect in that area shall be continued.

(d) Trailers shall not be spotted to circumvent a premium day's pay.

(e) Questions of interpretation regarding this Article shall be submitted directly to the New England Supplemental Negotiating Committee.

### Section 15. Double Bottoms

Drivers dispatched for double-bottom operation shall receive double-bottom rate to final destination even though a box, boxes, or kite are picked up or dropped enroute. However, double-bottom rate shall apply only to mileage from Compound nearest origin point to Compound nearest destination point.

### Section 16.

Article 29 in the National Agreement, applying to "Piggyback" shall also apply to single-man and double-man overhead operations.

## ARTICLE 62 - TWO-MAN OPERATION

### Section 1. Mileage Rates of Pay

The following rate of pay shall prevail for the two-man operation:

| (A) | Two-man Rate Per Mile | Single-man Rate Per Mile |
|---|---|---|
| Effective 4/1/98 | 46.9600¢ | 23.4800¢ |
| Effective 4/1/99 | 47.8350¢ | 23.9175¢ |
| Effective 4/1/00 | 48.7100¢ | 24.3550¢ |
| Effective 4/1/01 | 49.5850¢ | 24.7925¢ |
| Effective 4/1/02 | 50.4600¢ | 25.2300¢ |

| (B) Double Trailer | Two-man Rate Per Mile | Single-man Rate Per Mile |
|---|---|---|
| Effective 4/1/98 | 47.4600¢ | 23.7300¢ |
| Effective 4/1/99 | 48.3350¢ | 24.1675¢ |
| Effective 4/1/00 | 49.2100¢ | 24.6050¢ |
| Effective 4/1/01 | 50.0850¢ | 25.0425¢ |
| Effective 4/1/02 | 50.9600¢ | 25.4800¢ |

### Section 2. Pickup and Delivery and Delay Time

The rate of pay for pickup and delivery or delay time shall be as follows:

Pickup and delivery shall be paid for at the full hourly rate for each man but shall not apply to the man whose log of the run shows he



is on a rest period at the time the pickup or delivery is made. Full allowance for breakdown, layover, impassable highway and deadheading time and for lodging, etc., as specified elsewhere in this Agreement, shall obtain for both men.

Both drivers on two-man operations shall receive the same rate of pay when delayed on pickup and delivery, except when backed up into the dock and ready to unload, at which time only the one man on duty shall receive the hourly rate of pay.

| Hourly Rates of Pay | |
|---|---|
| Effective 4/1/98 | $18.37 |
| Effective 4/1/99 | 18.72 |
| Effective 4/1/00 | 19.07 |
| Effective 4/1/01 | 19.42 |
| Effective 4/1/02 | 19.77 |

There shall be no allowance for time spent taking fuel and oil enroute between terminals. Flagrant abuse of free time shall constitute a violation of this Section, and shall be subject to the grievance machinery.

### Section 3.

There shall be no two-man operation on runs less than eight hundred (800) miles round trip unless otherwise agreed to.

### Section 4. Sleeper Cab

Sleeper cab operations shall be between designated terminals with a designated home terminal. An Employer shall not operate sleeper cabs over the same route where he has established relay runs or through runs, except to move an unusual or overflow of freight, and in such event drivers employed on relay runs or through runs shall have full guaranteed preference unless otherwise agreed to, and sleeper cab drivers shall be compensated either by the mileage rate or hourly rate for all time spent on such relay route. Where sleeper cab drivers are required to lay over away from their home terminal, layover pay shall commence following the twelfth (12th) hour after the end of the run. If driver is held over after the twelfth (12th) hour, he shall be guaranteed two (2) hours' pay, in any event, for layover time.

If he is held over more than two (2) hours, he shall receive layover

pay for each hour held over up to eight (8) hours in the first twenty (20) of layover period, commencing after the run ends. This pay shall be in addition to the pay to which the man is entitled if he is put to work at any time within the twenty (20) hours after the run ends. The same principle shall apply to each succeeding eighteen (18) hours, and layover pay shall commence after the tenth (10th) hour. All other provisions of Article 62 shall apply except as may be provided below.

## Section 5.

The layover provisions of this Article shall apply at only one away-from-home terminal, and all time spent at all other points touched on a round trip from the home terminal, exclusive of meal time, is to be paid for at the full hourly rate to each man. The layover provision of this Article is to be applicable at such away-from-home terminal the first time reached on a round trip away from the home terminal, and such layover point shall be designated on the driver's original orders prior to the dispatch from point of origin and shall remain the same whether or not the driver touches that point. Upon the second or subsequent arrival at such away-from-home terminal prior to return to the home terminal, all time shall be paid for both men, and the layover provision shall not apply. All sleeper teams must be sent to their home terminal on the third dispatch, unless otherwise agreed to. The Employer shall provide in his dispatch rules and/or procedures 24 hours off at the home terminal at least once a week unless otherwise agreed to.

It shall not be considered a violation of the layover clause for a driver to take less than a statutory 8-hour rest period.

## Section 6.

Bedding and fresh linens for sleeper cabs to be furnished and maintained by the Employer in a clean and sanitary condition. Complaints with respect to width, depth, and conditions of mattresses shall be subject to the grievance procedure.

All sleeper equipment must be provided with air-conditioning or a mechanical cooling system and heating appliances. In the event of mechanical failure of such air-conditioning and heating appliances, repairs shall be made at the point of breakdown if proper facilities



are available. In any event drivers will be paid under the away-from-home terminal breakdown clauses at a point of destination for such repairs.

## Section 7.

Where driver teams are once established it is understood that they are not to be separated unless mutually agreed by the Company, the Union, and the driver team involved, except in case of emergency or reduction in force.

## Section 8.

Drivers who are off duty in the home terminal shall be notified between the hours of 4 p.m. and 6 p.m., if they are to be expected to report for work between the hours of 7 p.m. and 7 a.m., and provided further that drivers who are off duty in the home terminal before 5 p.m. on Saturday who are called to work prior to 12 midnight Sunday shall be given not less than six (6) hours' notice when ordered to report for duty. Above schedule can be changed only by mutual agreement between Local Union and Employer.

The notification required by this Section shall state the approximate time of departure with a two-hour leeway. After having been so notified, one notification to change or cancel the departure time can be given, except where an emergency exists, in which event a notification of the cancellation can be given.

After the emergency passes, normal dispatch procedure shall be resumed.

In the event a notified team, not properly cancelled, reports as notified and is not dispatched, the drivers shall each receive 4 hours call-in time if not put to work, or pay for all time spent after reporting and shall retain their position on the board. This shall not modify the week-end call provisions of the contract and shall not be employed as a subterfuge to avoid the intent and purpose of this interpretation.

The mentioned 6 hours' notice on week-ends shall not be in addition to the 10-hour provision.

In the event a trip becomes available in excess of the number required to protect notified drivers, both drivers on the next team to run shall

be called up to 12 o'clock midnight. If by midnight such first team refuses or is unavailable, the trip shall be offered to the next teams in order of their standing on the board.

No driver teams may or shall be separated for the purpose of such trip except in case of illness.

Any teams passed in keeping with the above shall retain their position on the dispatch board. The last team having 10 hours rest to which such trip is offered shall be required to take the trip, if no other teams above it takes the trip.

## Section 9.

A sleeper cab trip is exactly as is defined in Article 62, Section 4. During such sleeper cab trip, there may be a pickup or drop of freight and exchange of trailers at one intermediate point outbound and one intermediate point on the return trip, provided:

(1) There shall be no run-around or interference with leg, relay or through runs.

(2) There shall be no deliberate run-around payment as a subterfuge for running around leg, relay, or through runs.

(3) No freight or trailer, excluding empty trailers, shall be picked up outside of the New England Area destined for delivery within the same Area in which the pickup was made.

"Area" as used herein means either Teamsters contract or Teamsters Region Area or as agreed to by the parties.

This provision shall not apply where there is no relay or through run between the points involved, in which case the payment for such part of the trip shall be either under this contract or the Teamster Union contract applicable in such Area, whichever is the higher.

The above may be changed by mutual agreement, taking past practice into consideration, subject to approval of the New England Joint Area Committee.

## Section 10.

Each Over-the-Road Driver of sleeper cab equipment shall receive vacation pay at the period mentioned in the vacation provisions of



this Agreement as follows: Vacation pay shall be computed by dividing the employee's earnings of the last calendar year by fifty-two (52) to determine one week's earnings and then multiplying by the number of weeks earned vacation.

There shall be no exceptions to the above unless an employee is out of work because of his proven illness or injury resulting in inability to work for a cumulative period of four (4) weeks or more as evidenced by a doctor's certificate filed with the Company when returning to work, if required by the Company. Any period of illness or injury less than one (1) week (7 days) duration shall not be used to make up the four (4) weeks. When such conditions occur then the actual annual earnings for the calendar year involved shall be divided by fifty-two (52) less than the number of weeks of proven illness or injury as outlined above.

## Section 11.

Only two (2) men shall be permitted in sleeper cab equipment at any one time except in case of emergency, an Act of God, or where new type equipment is put into operation. In no event shall a master driver be in the cab in addition to the two regular drivers, for more than three hundred (300) miles and then only if requested by a majority of the regular drivers or by agreement of the team involved.

# ARTICLE 63 - OWNER-OPERATORS

All provisions of the National Master Freight Agreement relating to owner-operators shall apply. In addition, the minimum rate for leased equipment owned and driven by the owner-operator shall be:

Single axle tractor only. ..................................32 1/2 cents per mile

Tandem axle tractor only ......................................33 cents per mile

Single axle trailer and 35 to 40 foot tandem trailer only (with $8.00 minimum daily guarantee)..6 1/4 cents per mile

Tandem axle, 40 foot or over, trailer only (with $10.00 minimum daily guarantee) ..............................................7 1/4 cents per mile

Minimum daily guarantee for trailers does not apply to Saturday, Sunday, or Holidays It applies to either the first day or last day of use, but not both.

The above rates also apply to deadheading.

The above rates are based on twenty-three thousand (23,000) pounds load limit for single axle tractors and twenty-seven thousand (27,000) pounds load limit for tandem axle tractors.

On load limits over twenty-three thousand (23,000) pounds there shall be 1/2¢ additional per mile for each one thousand (1,000) pounds or fraction thereof in excess of twenty-three thousand (23,000) pounds.

There shall be a minimum guarantee of twenty-five thousand (25,000) pounds for leased single axle tractors and twenty-seven thousand (27,000) pounds for leased tandem axle tractors owned and driven by the owner-operator.

During the first year of a lease, there shall be a minimum guarantee of $100.00 a month for rental of single axle tractors unless the lease is terminated by mutual agreement or for just cause (which does not include layoff). There shall be an offset against such minimum monthly guarantee to the extent that rental income exceeds the minimum mileage rental revenue provided herein, and to the extent of other for hire rental revenue during periods of lay-offs. The carrier may, at its option, provide a minimum guarantee of twenty-six thousand (26,000) pounds for single axle tractors in lieu of the minimum monthly guarantee provided herein.

Nothing herein shall apply to leased equipment not owned by the driver. The minimum rates set forth above result from the joint determination of the parties that such rates represented only the actual cost of operating such equipment. The parties have not attempted to negotiate a profit for the owner-operator.

## ARTICLE 64 - HEALTH AND WELFARE FUND

(a) Commencing with the 1st day of April, 1998 and for the duration of the current collective bargaining agreement and any renewals or extensions thereof, the Employer agrees to make payments to the respective Health and Welfare Funds for each and every employee performing work within the scope of and/or covered by this collective bargaining agreement, whether such employee is a regular, probationary, temporary or casual employee, irrespective of his sta-



tus as a member or non-member of the Local Union from the first hour of employment subject to this collective bargaining agreement as follows:

(b) Commencing with the 1st day of April, 1998 the Employer shall contribute to the respective Health and Welfare Funds the sum of $3.7625 per hour figured to the nearest quarter hour for which an employee covered by this Agreement receives pay up to a maximum of forty (40) hours but not more than $150.50 per week for any one employee.

Commencing with the 1st day of April, 1999, the Employer shall contribute to the respective Health and Welfare Funds the sum of $3.7625 per hour figured to the nearest quarter hour for which an employee covered by this Agreement receives pay up to a maximum of forty (40) hours but not more than $150.50 per week for any one (1) employee.

Commencing with the 1st day of April, 2000, the Employer shall contribute to the respective Health and Welfare Funds the sum of $4.1625 per hour figured to the nearest quarter hour for which an employee covered by this Agreement receives pay up to a maximum of forty (40) hours but not more than $166.50 per week for any one (1) employee.

Commencing with the 1st day of April, 2001, the Employer shall contribute to the respective Health and Welfare Funds the sum of $4.4125 per hour figured to the nearest quarter hour for which an employee covered by this Agreement receives pay up to a maximum of forty (40) hours but not more than $176.50 per week for any one (1) employee.

Commencing with the 1st day of April, 2002, the Employer shall contribute to the respective Health & Welfare Funds the sum of $4.4625 per hour figured to the nearest quarter hour for which an employee covered by this Agreement receives pay up to a maximum of forty (40) hours but not more than $178.50 per week for any one (1) employee.

Commencing with the 1st day of April, 1998, and for the duration of the current collective bargaining agreement and any renewals or extensions thereof, the Employer agrees to make payments to the respective Health & Welfare Funds as follows:

(1) The Employer agrees to make contributions up to a maximum

of forty (40) hours in behalf of a regular local employee who may be on layoff status during any payroll period but has completed three (3) days of work in that payroll period.

(2) The Employer agrees to make contributions up to a maximum of forty (40) hours in behalf of a regular road driver who may be on layoff status during any payroll period but has completed two (2) tours of duty in that payroll period.

For purposes of this Article, each hour paid for or any portion thereof, figured to the nearest quarter hour, as well as hours of paid vacation, paid holidays and other hours for which pay is received by the employee shall be counted as hours for which contributions are payable.

If a regular employee is absent because of illness or off-the-job injury and notifies the Employer of such absence, the Employer shall continue to make the required contribution of 32 hours for a period of four (4) weeks. If a regular employee is injured on the job the Employer shall continue to pay the required contributions until such employee returns to work; however, such contributions of 32 hours shall not be paid for a period of more than twelve (12) months.

There shall be no deduction from equipment rental of owner-operators by virtue of the contributions made to the Health and Welfare Fund, regardless of whether the equipment rental is at the minimum rate or more, and regardless of the manner of computation of owner-driver compensation.

Hourly contributions to the Health and Welfare Fund must be made for each hour worked on each regular or extra employee, even though such employee may work only part time under the provisions of this contract, including weeks where work is performed for the Employer but not under the provisions of this contract, and although contributions may be made for those weeks into some other Health and Welfare Fund.

In the case of employees paid on a mileage basis, the numbers of hours of contribution to the Health and Welfare Fund shall be determined by dividing that employee's gross earnings for the week by the current hourly rate. Gross earnings shall include any other hours paid for, such as waiting time, breakdown time, pick-up and drop-off time, subject to the maximum weekly amount of contributions set forth above, not to exceed forty (40) hours per week per employee.



All contributions shall be made at such time and in such manner as the Trustees require, and the Trustees shall have the authority to have an independent Certified Public Accountant audit the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the Welfare Fund.

If an Employer fails to make contributions to the Welfare Fund within 72 hours after the notice of delinquency set forth in Article 46, Section 3, the Local Union shall take whatever steps are necessary to secure compliance with this Article, any provisions of this Agreement to the contrary notwithstanding, and the Employer shall be liable for all costs for collecting the payments due together with attorneys' fees and such penalties which may be assessed by the Trustees.

The Employers' liability for payment hereunder shall not be subject to the Grievance Procedure or arbitration provided under this Agreement.

(c) The Employers and Union which are signators hereto ratify the designation of the Employer and the Employee Trustees under such Agreement, and ratify all action already taken, or to be taken by such Trustees within the scope of their authority.

(d) All Employers contributing hereunder shall post each month at each terminal or other place of business where employees have easy access thereto an exact copy of the remittance report form of contributions sent to the Fund.

(e) Whenever an Employer signatory to this Agreement becomes delinquent in contributions owed to the Health and Welfare Fund and the Local Union serves a 72-hour notice of delinquency set forth in Article 46, Section 3, such Employer after satisfying the delinquency and becoming current, and then during the term of this Agreement becomes delinquent again, shall be required to post a performance bond to satisfy that second delinquency and/or any further delinquencies during the term of this Agreement.

(f) The Trustees or their designated representatives shall have the authority to audit the payroll and wage records of the Employer for all individuals performing work within the scope of and/or covered by this Agreement, for the purpose of determining the accuracy of contributions to the funds and adherence to the requirements of this Agreement regarding coverage and contributions. For purpos-

es of such audit, the Trustees or their designated representatives shall have access to the payroll and wage records of any individual, including owner-operators, lessors and employees of fleet owners (excluding any supervisory, managerial and/or confidential employees of the Employer) who the Trustees or their designated representatives reasonably believe may be subject to the Employer's contribution obligation.

(g) The provisions of Article 8(6)(a) of the NMFA shall not apply to Health and Welfare contributions made under the New England Supplemental Freight Agreement when a change of operations involves only Local Unions and Health and Welfare Funds solely contained within the jurisdiction of the Southern New England Supplemental Freight Agreement, providing there is reciprocity between the Funds involved.

Note: Employees covered by this agreement who were formerly represented by IBT Union Local 526 and are currently represented by IBT Union Local 251, including all new hires, shall have Health and Welfare contributions made on their behalf to the Local 251 Health and Welfare fund.

## ARTICLE 65 - PENSION FUND

This Pension Article shall supersede and prevail over any other inconsistent provisions or articles contained within this Agreement.

(a) Commencing with the 1st day of April, 1998 and for the duration of the current collective bargaining agreement and any renewals or extensions thereof, the Employer agrees to make payments to the New England Teamsters and Trucking Industry Pension Fund for each and every employee performing work within the scope of and/or covered by this collective bargaining agreement, whether such employee is a regular, probationary, temporary or casual employee, irrespective of his status as a member or nonmember of the Local Union, from the first hour of employment subject to this collective bargaining agreement as follows:

For each hour or portion thereof, figured to the nearest quarter hour for which an employee receives pay or for which pay is due the Employer shall make a contribution of $3.46 per hour to the New England Teamsters and Trucking Industry Pension Fund but not



more than $138.40 per week for any one employee from the first hour of employment in such week.

Commencing with the 1st day of April, 1999, the said hourly contribution rate shall be $3.76 but not more than $150.40 per week for any one (1) employee; and,

Commencing with the 1st day of April, 2000, the said hourly contribution rate shall be $3.91 but not more than $156.40 per week for any one (1) employee.

Commencing with the 1st day of April 2001, the said hourly contribution rate shall be $4.06 but not more than $162.40 per week for any one (1) employee.

Commencing with the 1st day of April 2002, the said hourly contribution rate shall be $4.21 but not more than $168.40 per week for any one (1) employee.

Commencing with the 1st day of April, 1998, and for the duration of the current collective bargaining agreement and any renewals or extensions thereof, the Employer agrees to make payments to the New England Teamsters and Trucking Industry Pension Fund as follows:

(1) The Employer agrees to make contributions up to a maximum of forty (40) hours in behalf of a regular local employee who may be on layoff status during any payroll period but has completed three (3) days of work in that payroll period.

(2) The Employer agrees to make contributions up to a maximum of forty (40) hours in behalf of a regular road driver who may be on layoff status during any payroll period but has completed two (2) tours of duty in that payroll period.

For purposes of this Article, each hour for which wages are paid or due, or any portion thereof, figured to the nearest quarter hour, as well as hours of paid vacation, paid holidays and other hours for which pay is due or received by the employee, shall be counted as hours for which contributions are payable. In computing the maximum amount due any week, there shall be no daily limit on the number of hours for any one day in such week, whether such hours are performed on straight time or overtime rates, but payments shall be made at the amount set forth above.

In the case of employees paid on a mileage basis, the number of

hours of contribution to the Pension Fund shall be determined by dividing that employee's gross earnings for the week by the current hourly rate. Gross earnings shall include any other hours paid for, such as waiting time, breakdown time, pick-up and drop-off time, subject to the maximum weekly amount of contributions set forth above, not to exceed forty (40) hours per week per employee.

If a regular employee (as defined in the collective bargaining agreement) is absent because of illness or off-the-job injury and notifies the Employer of such absence, the Employer shall continue to make the required contributions for a period of four (4) weeks, for forty (40) hours per week. If a regular employee is injured on the job, the Employer shall continue to pay the required contributions at the rate of forty (40) hours for each such week until the employee returns to work; however, such contributions of forty (40) hours shall not be paid for a period of more than twelve (12) months.

(b) The Employer agrees to and has executed a copy of the New England Teamsters and Trucking Industry Pension Fund Agreement and Declaration of Trust dated April 11, 1958, and accepts such Agreement and Declaration of Trust, as amended, and ratifies the selection of the Employer Trustees now or hereafter serving as such, and all action heretofore or hereafter taken by them within the scope of their authority under such Agreement and Declaration of Trust.

(c) The parties agree that the Pension Plan adopted by the Trustees of the New England Teamsters and Trucking Industry Pension Fund shall at all times conform to the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat its contributions made to the Fund as a deduction for income tax purposes.

(d) It is also agreed that all contributions shall be made at such time and in such manner as the Trustees shall reasonably require; and the Trustees shall have the authority to have an audit of the payroll and wage records of the Employer for all employees performing work within the scope and/or covered by this collective bargaining agreement for the purpose of determining the accuracy of contributions to the Pension Fund and adherence to the requirements of this Article of the collective bargaining agreement regarding coverage and contributions, such audit may, at the option of the Trustees, be conducted by an independent certified public accoun-



tant or a certified public accountant employed by the New England Teamsters and Trucking Industry Pension Fund.

If the Employer shall fail to make contributions to the Pension Fund by the twentieth (20th) day of the month following the month during which the employees performed work or received pay or were due pay within the scope of this collective bargaining agreement, up to and including the last completed payroll period in the month for which contributions must be paid, or if the Employer, having been notified that its contributions to the Fund have been under reported and/or underpaid, fails within twenty (20) days after such notification to make any required self-audit and/or contributions found to be due, the Local Union shall have the right after an appropriate 72-hour notice to the Employer, to take whatever steps it deems necessary to secure compliance with this agreement, any provision of this collective bargaining agreement to the contrary notwithstanding, and the Employer shall be responsible to the employees for losses resulting therefrom. Also, the Employer shall be liable to the Trustees for all costs of collecting the payments due together with attorneys' fees and such interest, liquidated damages or penalties which the Trustees may assess or establish in their discretion. The Employer's liability for payment hereunder shall not be subject to the grievance procedure and/or arbitration if such is provided in this Agreement.

It is understood and agreed that once a payment or payments are referred to an attorney for collection by the Trustees of the New England Teamsters and Trucking Industry Pension Fund and/or the Local Union, the Local Union and its business agents or chief executive officer shall have no right to modify, reduce or forgive the Employer with respect to its liability for unpaid contributions, interest, liquidated damages or penalty as may be established or assessed by the Trustees in their discretion against delinquent Employers.

(e) There shall be no deduction for equipment rental of owner-operators by virtue of the contributions made to the Pension Fund, regardless of whether the equipment rental is at the minimum rate or more, and regardless of the manner of computation of owner-driver compensations.

(f) Contributions to the Pension Fund must be made for each week on each regular or extra employee, even though such employee may work only part time under the provisions of this contract, includ-

ing weeks where work is performed for the Employer but not under the provisions of this contract, and, although contributions may be made for those weeks into some other Pension Fund.

(g) No oral or written modification of this Article regarding pensions and retirement shall be made by the Local Union or the Employer and, if made, such modification shall not be binding upon the employees performing work within the scope of this collective bargaining agreement and covered by this Article or upon the Trustees of the New England Teamsters and Trucking Industry Pension Fund.

(h) All Employers contributing hereunder shall post each month at each terminal or other place of business where employees have easy access thereto an exact copy of the remittance report form of contributions sent to the Fund.

(i) Whenever an Employer signatory to this Agreement becomes delinquent in contributions owed to the Pension Fund and the Local Union serves a 72-hour notice of delinquency set forth in Article 46, Section 3, such Employer after satisfying the delinquency and becoming current, and then during the term of this Agreement becomes delinquent again, shall be required to post a performance bond to satisfy that second delinquency and/or any further delinquencies during the term of this Agreement.

(j) The Trustees or their designated representatives shall have the authority to audit the payroll and wage records of the Employer for all individuals performing work within the scope of and/or covered by this Agreement, for the purpose of determining the accuracy of contributions to the funds and adherence to the requirements of this Agreement regarding coverage and contributions. For purposes of such audit, the Trustees or their designated representatives shall have access to the payroll and wage records of any individual, including owner-operators, lessors and employees of fleet owners (excluding any supervisory, managerial and/or confidential employees of the Employer) who the Trustees or their designated representatives reasonably believe may be subject to the Employer's contribution obligation.



## ARTICLE 66 - AUTOMATIC INCREASES

The provision of Article 61 (Overhead Operations), Article 62 (Two-Man Operations) and Article 63 (Owner-Operators) shall be automatically amended to incorporate whatever amendments or changes may be made in the parallel provisions of the Central States, Over-the-Road Motor Freight Agreement for the contract period starting April 1, 1991, effective as of the dates such amendments or changes become effective under such Central States Agreement.

## ARTICLE 67 - TERMINATION CLAUSE

The term of this Supplemental Agreement shall be from April 1, 1998 to March 31, 2003.

## SOUTHERN NEW ENGLAND TNFINC/TMI NEGOTIATING COMMITTEE MEMORANDUM OF AGREEMENT

Laid off employees shall be guaranteed forty (40) hours Health, Welfare and Pension contributions in accordance with Article 64 and Article 65 of the New England Supplemental Freight Agreement, providing they are available for the next work call after having not been available for the first work call, providing all work calls are verified. In cases where work calls are received through an answering machine the Company agrees to leave a message outlining the work opportunity and time of the message. Laid off employees who refuse work will have broken their guarantee.

IN WITNESS WHEREOF the parties hereto have set their hands and seals this _____ day of _____________, 1998 to be effective as of April 1, 1998 except as to those areas where it has been otherwise agreed between the parties:

NEGOTIATING COMMITTEE
*For the Local Unions:*
TEAMSTERS NATIONAL FREIGHT INDUSTRY
NEGOTIATING COMMITTEE
Thomas Sever, Chairman
Richard Nelson, Co-Chairman

| | |
|---|---|
| Thomas (Mike) Booth | Frank Busalacchi |
| Randy Cammack | Samuel M. Carter |
| George Cashman | Patrick Flynn |
| Walter A. Lytle | James Minisci |
| Ed Mireles | Donald Newton |
| Nicholas Picarello | Chuck Piscitello |
| Donald Scott | Lester Singer |
| W.C. "Willie" Smith | Theodore Uniatowski |
| Harold J. Yates | Phil Young |

NEW ENGLAND TEAMSTERS
NEGOTIATING COMMITTEE
George W. Cashman, Chairman
William Carnes, Co-Chairman

| | |
|---|---|
| Stuart Mundy, LU 251 | Anthony Buonpane, LU 443 |

*For the Employers:*
TRUCKING MANAGEMENT, INC.
Arthur H. Bunte, Jr., Chairman

| | |
|---|---|
| John Dale | Don Little |
| Stan Newman | Anthony Simoes |
| Jack Ferrone | Pete Hassler |
| Kermit Scarborough | Don Emery |
| Jim Roberts | Hal Franke |

REGIONAL CARRIERS, INC.



NEW ENGLAND EMPLOYERS
NEGOTIATING COMMITTEE
Peter Hassler, Chairman

| | |
|---|---|
| John Novak | Michael Scalzo |

Robert Mergenhagen
Robert Schaffer

IN WITNESS HEREOF the undersigned do duly execute The National Master Agreement and Supplemental Agreement (and Riders, if any) set forth herein.

FOR THE UNION LOCAL UNION No. ________, affiliate of International Brotherhood of Teamsters.

By ______________________________
(Signed)

Its ______________________________
(Title)

FOR THE COMPANY

______________________________
(Company)

By ______________________________
(Signed)

Its ______________________________
(Title)

Home Office Address:

______________________________
(Street)

______________________________
(City) (State)

______________________________
(Date Signed)



# INDEX


PAGE

ARTICLE 40 - SCOPE OF AGREEMENT ....164
Section 1. Operations Covered ....164
Section 2. Employees Covered ....164
Section 3. Notice of Opening and Closing Terminals ....165
Section 4. Hired or Leased Equipment ....165
ARTICLE 41 - STEWARDS - APPOINTMENTS AND DUTIES ....165
ARTICLE 42 - ABSENCE ....166
Section 1. Time Off for Union Activities ....166
Section 2. Leave of Absence ....167
ARTICLE 43 - SENIORITY ....167
Section 1. ....167
Probationary Employees ....167
Casual Employees ....168
Regular Employees ....169
Section 2. Opening and/or Closing of Branches, Terminals, Divisions or Operations ....172
Section 3. "House Concerns" ....174
Section 4. Loss of Seniority ....175
ARTICLE 44 - OTHER BUSINESS, ETC. ....175
Section 1. Other Business ....175
Section 2. Extra Contract Agreements ....175
Section 3. New Equipment and/or Operations ....176
ARTICLE 45 - GRIEVANCE MACHINERY COMMITTEE ....176
Section 1. New England Joint Area Committee ....176
Section 2. Eastern Region Joint Area Committee ....176
Section 3. Contiguous Territory ....177
Section 4. Function of Committees ....177
Section 5. Change of Terminals, etc. ....177
Section 6. Attendance ....177
Section 7. Examination of Records ....177
ARTICLE 46 - GRIEVANCE MACHINERY AND UNION LIABILITY ....178
Section 1. ....178
Section 2. ....180
Section 3. ....181
Section 4. National Grievance Committee ....181

ARTICLE 47 - DISCHARGE AND SUSPENSION ....................181
ARTICLE 48 - PAYROLL PERIOD ....................182
ARTICLE 49 - SUNDAYS AND HOLIDAYS ....................183
ARTICLE 50 - VACATIONS ....................184
ARTICLE 51 - MISCELLANEOUS ....................186
Section 1. Accident Reports ....................186
Section 2. Court Appearances ....................186
Section 3. Safety Violations ....................186
Section 4. Bonds ....................187
Section 5. Examinations ....................187
Section 6. Personal Identification ....................187
Section 7. On-the-Job Claims ....................187
Section 8. Loss or Damage ....................188
Section 9. Access to Premises ....................188
Section 10. Injury on the Job ....................188
Section 11. ....................188
Section 12. Other Equipment ....................188
Section 13. Death in Family ....................189
Section 14. ....................189
Section 15. ....................189
Section 16. ....................190
Section 17. ....................190
Section 18. Administrative Dues ....................190
Section 19. Sick Leave ....................190
ARTICLE 52 - CLASSIFICATIONS ....................191
ARTICLE 53 - HOURS OF WORK AND OVERTIME ....................192
Section 1. ....................192
Section 2. ....................192
Section 3. ....................192
Section 4. ....................193
Section 5. Break Bulk Terminal Operation ....................194
ARTICLE 54 - WAGES AND ALLOWANCES ....................195
ARTICLE 55 - CLASSIFICATIONS AND TRIP RATES ....................197
ARTICLE 56 - MILEAGE RATES ....................198
ARTICLE 57 - PICK-UPS, DELIVERIES AND RATE FORMULA ....................198
ARTICLE 58 - RELIEF HOLDOVER, PREMIUM PAY & EXPENSES ....................199





ARTICLE 59 - DROPPING TRAILERS ....................200
ARTICLE 60 - DOUBLE BOTTOMS ....................201
ARTICLE 61 - OVERHEAD OPERATIONS ....................201
Section 1. Definition ....................201
Section 2. Single Man Operation Rates ....................201
Section 3. Double Bottom Units ....................202
Section 4. Pickup and Delivery ....................202
Section 5. Mileage Determination For All Runs ....................203
Section 6. Schedule of Dispatching ....................203
Section 7. Lodging ....................204
Section 8. Paid For Time - General ....................205
Section 9. Call-In Time ....................205
Section 10. Layovers ....................205
Section 11. Breakdowns or Impassable Highways ....................206
Section 12. Deadheading ....................207
Section 13. Bobtailing ....................207
Section 14. Dropping Trailer ....................207
Section 15. Double Bottoms ....................208
Section 16. ....................208
ARTICLE 62 - TWO-MAN OPERATION ....................208
Section 1. Mileage Rates of Pay ....................208
Section 2. Pickup and Delivery and Delay Time ....................208
Section 3. ....................209
Section 4. Sleeper Cab ....................209
Section 5. ....................210
Section 6. ....................210
Section 7. ....................211
Section 8. ....................211
Section 9. ....................212
Section 10. ....................212
Section 11. ....................213
ARTICLE 63 - OWNER-OPERATORS ....................213
ARTICLE 64 - HEALTH AND WELFARE FUND ....................214
ARTICLE 65 - PENSION FUND ....................218
ARTICLE 66 - AUTOMATIC INCREASES ....................223
ARTICLE 67 - TERMINATION CLAUSE ....................223
SOUTHERN NEW ENGLAND TNFINC/TMI NEGOTIATING COMMITTEE MEMORANDUM OF AGREEMENT ....................223




Case 3:03-cv-30307-KPN Document 1-2 Filed 12/18/2003 Page 20 of 20